## WATSON E. BOISE *vs.* SAMUEL KNOX & another.

**A.** mortgaged personal property to B. to secure a note which was made payable in fourteen months, and subsequently gave to C. a bill of sale of the same property, with a reservation of the right to keep possession thereof until C. should call for it. A. and B. afterwards made an agreement, which was entered upon said mortgage and note, that the note should be paid in three months, and that A. should deliver said property to B. in three months, or at any time after, on B.'s demand thereof, if A. should fail so to pay the note : All the said papers, except the note, were recorded by the clerk of the town where A. resided : Soon after the expiration of three months, C and D. took said property from A. and converted it to their own use, for the purpose of fraudulently secreting and withholding it from B., so as to defeat his mortgage and lien. *Held*, that B might maintain an action of trespass against C. and D., without making a demand on them for the property.

TRESPASS for taking, &c. a dish-mill and machinery thereto belonging, ten cows, one heifer, two horses, an ox-cart, a wagon, and other chattels, alleged in the writ to be the property of the plaintiff.

At the trial in the court of common pleas, before *Ward*, J. the plaintiff claimed title to said chattels, under a mortgage thereof made to him by William C. Clark, dated February 17th 1843. The condition of this mortgage was thus : "If the said William C. shall well and truly pay to the said Watson E. the contents of a note payable to said Watson E., dated February 17th 1843, for the sum of $243·54 payable in one year from the 1st of April next, with interest, then this deed to be void ; otherwise, to remain in full force and virtue."

The defendant Knox claimed title to said chattels by virtue of a bill of sale thereof from said Clark, dated March 7th 1843, given to said Knox on account of an old debt to him

from Clark, " to have and to hold the same to him, and their use and benefit forever; said property to remain in my ' (Clark's) " possession until called for by said Samuel Knox, and then to be delivered up to him free of expense."

It appeared in evidence, that after Knox had received said bill of sale, viz. on the 13th of March 1843, the plaintiff and said Clark caused a memorandum to be made on the mortgage aforesaid held by the plaintiff, as follows : " In consideration of one dollar paid by Watson E. Boise, I, William C. Clark, agree to deliver to the said Boise the property described in the within mortgage, on the first day of May next, or at any subsequent period when the said Boise shall see fit to demand the same, free of expense to said Boise ; provided I shall fail to pay a note of even date with the within instrument, which I have agreed to pay on the first day of May next. William C. Clark." Also the following memorandum on the said note of Clark to the plaintiff: " The above note to be paid the first of May 1843, instead of April 1844. William C. Clark." The said mortgage, and the memorandum thereon, and the notice of January 20th 1844, hereinafter mentioned, and the said bill of sale, were duly recorded in the office of the clerk of the town of Blandford, where Clark, the mortgagor, resided.

It also appeared in evidence, that the defendants, Samuel Knox and Henry B. Wadhams, on the 6th of May 1843, called on said Clark, who then remained in possession of said chattels ; that Knox professed to sell the same to Wadhams ; and that the same were taken from Clark and conveyed into the State of Connecticut in the night time. And there was evidence tending to show that this was done for the sole purpose of secreting said chattels from the plaintiff, and wholly defeating his lien thereon.

There was evidence that the plaintiff, on the 20th of January 1844, (before the commencement of this action,) gave the following notice to said Clark and Knox : " Messrs. This notice is to inform you that I shall foreclose the mortgage given by William C. Clark, February 17th 1843 of $243·54,

4 *

on the first day of April next, and that I shall then call for the property embraced in said mortgage. Yours respectfully,

Watson E. Boise."

There was evidence tending to show, that when the memoranda were made on the note and mortgage held by the plaintiff, he promised that he would not take possession of the mortgaged property, unless Knox should interfere with it.

The defendants contended that the plaintiff could not recover, 1st, because the memoranda on the note and mortgage were such alterations as avoided them as to Knox; 2d, that this action could not be maintained at all; 3d, that, at least it could not be maintained without a previous demand. But the judge ruled, that said memoranda were merely inoperative as to Knox, and he instructed the jury, that if they believed the property had been taken and removed by the defendants, and converted to their own use, for the sole purpose of fraudulently secreting and withholding it from the plaintiff, so as wholly to defeat his mortgage and lien, then the plaintiff could maintain this action.

The jury found a verdict against both defendants, and they alleged exceptions to the ruling and instruction of the judge.

*R. A. Chapman & W. G. Bates*, for the defendants. The plaintiff had the property, subject to Clark's right to redeem; but he had not the right of possession, because of his agreement with Clark. Clark, being in possession, conveyed to Knox. The plaintiff, therefore, cannot maintain trespass. *Woodruff* v. *Halsey*, 8 Pick. 333. *Cooper* v. *Chitty*, 1 Bur. 20. *Smith* v. *Mills*, 1 T. R. 480. *Gordon* v. *Harper*, 7 T. R. 9.

The judge's ruling, that the alteration of the mortgage was merely inoperative as to Knox, was incorrect. That alteration postponed Boise, the mortgagee, to the defendant Knox. See *Jones* v. *Fales*, 4 Mass. 245. *Springfield Bank* v. *Merrick*, 14 Mass. 322. *Heywood* v. *Perrin*, 10 Pick. 228. *Wheelock* v. *Freeman*, 13 Pick. 165. It should have been left to the jury to decide whether the alteration was not designed as a fraud on Knox. *Crowninshield* v. *Kittredge*, 7 Met. 520.

*Boise,* for the plaintiff. The alteration of the mortgage, being made by agreement of the mortgagor and mortgagee, cannot affect the plaintiff's claim on the mortgage. *Camden Bank* v. *Hall,* 2 Green, 583. *Warring* v. *Williams,* 8 Pick. 322. *Woolley* v. *Constant,* 4 Johns. 54.

Knox, by his bill of sale, made a month after the mortgage, acquired no right against the plaintiff, the mortgagee. The plaintiff had not only the right of possession, but the record of the mortgage was notice of that right, and was also tantamount to possession. Rev. Sts. *c.* 74, § 5. *Bullock* v. *Williams,* 16 Pick. 33. *Ames* v. *Phelps,* 18 Pick. 314. Trespass, therefore, well lies in this case, without a previous demand. See *Woodruff* v. *Halsey,* 8 Pick. 333. *Forbes* v. *Parker,* 16 Pick. 462. *Imlay* v. *Sage,* 5 Connect. 489.

SHAW, C. J. The court are of opinion that the directions to the jury were right. The mortgage was an actual, though conditional transfer and conveyance of the cattle and goods, by which the property vested immediately in the mortgagee, defeasible on a condition subsequent; and there being no stipulation that the possession should remain with the mortgagor, the right of possession followed as incident to the right of property, and the possession of the mortgagor was that of the mortgagee. And it made no difference as to the property and the possession, and the legal rights of the mortgagee therein, whether the debt for which they were hypothecated was due or not. *Woodruff* v. *Halsey,* 8 Pick. 333.

Knox took nothing, by his subsequent bill of sale from Clark, but a right of redemption. The agreement between Clark and Boise, of 13th of March, to accelerate the payment of the note, could not be injurious to Knox, because it did not affect the right of possession that was in the plaintiff before; nor the right of redemption, which, as against Knox, he could not foreclose till sixty days after April 1st 1844, the time originally fixed by the mortgage.

If any reliance was placed on a second agreement, made by the plaintiff at the time of the memorandum, for accelerating the payment of the note, that the mortgagor should retain

possession, it must be taken in connexion with the other part of the supposed agreement, viz. if Knox did not interfere; then, when Knox did interfere, such general right of possession, if otherwise established, was at an end.  Nor do we think there is any ground for the suggestion made at the trial, that before bringing an action there should have been a demand made.  The direction was, that if the property was secretly and fraudulently withdrawn by the defendants, to defeat the plaintiff of his rights, the plaintiff could maintain this action; and the jury, by finding for the plaintiff, have found that it was so fraudulently withdrawn.  A demand is often necessary in trover, when the original taking was not tortious, to prove a conversion, which is the gist of the action. But we are not aware that a demand is ever necessary to maintain trespass, in which the gist of the action is a *tortious taking*.  If a tortious *taking* is not proved, the action cannot be maintained; if a tortious taking is proved, a demand would not be necessary, even in trover.  Bul. N. P. 44.  *Thurston* **v.** *Blanchard*, 22 Pick  20.

*Exceptions overruled.*